UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM EGAN, *individually and as assignee of*
*CompMed Advantage, Inc.*,

                            Plaintiff,

            v.                                                      1:25-cv-00451 (AMN/DJS)

COVENTRY HEALTH CARE WORKERS
COMPENSATION, INC., and COVENTRY WORKERS
COMP SERVICES, *a division of Enlyte*,

                            Defendants.

_____

APPEARANCES:                                      OF COUNSEL:

**GRANICH LAW FIRM**                          **JOSEPH A. GRANICH, ESQ.**
21 Colvin Avenue
Albany, New York 12206
*Attorneys for Plaintiff*

**GORDON REES SCULLY MANSUKHANI**    **FRANCES C. SLUSARZ, ESQ.**
One Battery Park Plaza – 28th Floor              **MARK BECKMAN, ESQ.**
New York, New York 10004
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

On November 29, 2024, plaintiff William Egan ("Plaintiff") commenced this action in New York State Supreme Court, alleging breach of contract claims against defendants Coventry Health Care Workers Compensation, Inc. ("Coventry") and Coventry Workers Comp Services, a division of Enlyte ("Enlyte" and, together with Coventry, "Defendants").  Dkt. No. 2 ("Complaint").  On April 10, 2025, Defendants removed this action to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1332.  Dkt. No. 1.

1

Presently before the Court are Defendants' motion to dismiss pursuant to Rule 12(b)(5) and (b)(6) of the Federal Rules of Civil Procedure, Dkt. No. 22 ("Motion"); Dkt. No. 33, and Plaintiff's cross-motion to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure, Dkt. No. 30. For the reasons set forth below, the Court grants the Motion and denies Plaintiff's cross-motion.

## II.    BACKGROUND

### A.  The Parties

Plaintiff resides in New York and "was the sole shareholder of CompMed Advantage, Inc. ["CompMed"] and is the assignee of all rights, contracts, and claims of CompMed[ ]."  Dkt. No. 2 at ¶ 1.  Plaintiff alleges that CompMed was a corporation organized under New York state law with its principal place of business in New York.  *Id.* at ¶ 2.  Plaintiff alleges that, at some point, CompMed "was subsequently dissolved after transferring and assigning all of its remaining rights, contracts, and claims to" Plaintiff "individually."  *Id.*  Plaintiff contends that "[a]s a result of this assignment, [he] possesses the right to seek recovery against the Defendants herein."  *Id.*

Plaintiff alleges that Coventry is a corporation organized under Delaware law with its principal place of business in Pennsylvania, *id.* at ¶ 3, and that Enlyte is a corporation organized under California law, *id.* at ¶ 4.  With respect to these entities, Plaintiff alleges that:

> The exact nature of the relationship between Coventry and Enlyte is not presently known to the Plaintiff and therefore both entities are included as party defendants in this action, and collectively referred to herein as "Defendants," in an effort to ensure that the Plaintiff has the capacity to recover from the proper party ultimately found to be liable under the facts present here.  The allegations asserted in this Complaint against Coventry apply equally to Enlyte, to the extent it is the successor, affiliate or parent of Coventry.

*Id.* at ¶ 5.

### B. Plaintiff's Factual Allegations

#### 1. The Agreement

Plaintiff alleges that his claims arise from an "Independent Consultant Agreement" (the "Agreement"). *Id.* at 3, ¶ 6.[1] Plaintiff attaches a copy of the Agreement to the Complaint as an exhibit. *Id.* at 10-18; *see also Santos v. Kimmel*, 154 F.4th 30, 33 (2d Cir. 2025) (stating that when evaluating a motion to dismiss under Rule 12(b)(6), a court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.") (citation omitted).

The Agreement identifies Coventry and CompMed as the parties, and defines CompMed as the "Consultant." *Id.* at 11, 17. Coventry and CompMed are the only signatories to the Agreement. *Id.* at 17. The Agreement states that it is effective February 1, 2013 and that its term can be renewed, unless terminated. *Id.* at 11, Art. 2.

As relevant here, the Agreement sets forth various "client management and service functions" that "Consultant will assist Coventry by performing" for "Client(s)." *Id.* at 12, § 4.2. In exchange, "Coventry will pay Consultant a commission upon the terms and conditions of this Article 6[.]" *Id.* at 13, § 6.1; *see also id.* at 3, ¶ 8. Article 6 provides in pertinent part that:

> Coventry will pay Consultant the commission as set forth in a fully-executed Schedule of Services and Commissions ("Schedule"), a form of which is attached hereto as Exhibit I. Additional Schedules may be executed from time to time by Coventry and Consultant when Services are sold to a Client by Consultant. When fully executed, each such schedule shall be incorporated into, and become a part of, this Agreement.

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination. The second and third pages of the Complaint number different allegations with the same paragraph numbers. *Compare* Dkt. No. 2 at 2, ¶¶ 6-8, *with id.* at 3, ¶¶ 6-8.

*Id.* at 13, § 6.2. The final page of the Agreement is an executed Schedule, again signed by CompMed and Coventry, and states that it is "Schedule Number: 1[.]" *Id.* at 18. According to this Schedule, "'Client' means New York State Insurance Fund ('NYSIF')[.]" *Id.* at 18, § 1.1. Plaintiff does not attach any other executed Schedules, nor does he allege that there are any further Schedules. *See generally* Dkt. No. 2.

Section 6.3 of the Agreement (entitled "Commission Payment") provides that "Coventry will pay a monthly commission to Consultant on or before the fifteenth (15th) of the month[.]" *Id.* at 13, § 6.3. Section 6.4 (entitled "Commission Termination") provides that "Consultant may earn no further commission relating to a specific Client as of[,]" as relevant here: "6.4.4 The date the relationship between Consultant and such Client is terminated by Consultant or Client for any reason. Consultant must notify Coventry immediately of any such termination." *Id.* at 13-14, § 6.4.

Article 7 of the Agreement (entitled "Termination") provides in pertinent part that:

This Agreement, or any Scheduled appended to this Agreement, may be terminated upon notice thereof given by either party if any one of the following occurs:

7.1     Default.   Failure of either party to meet any material covenant, agreement or obligation set forth in this Agreement ("Default") if the Defaulting party has not cured the Default within thirty (30) days after receipt of written notice thereof.

. . . .

7.4     Other Terminations.  If any of the conditions set forth in Section 6.4 occur.

*Id.* at 14, Art. 7.

Article 9 of the Agreement (entitled "No Assignment") provides in pertinent part that: "Consultant may not assign or transfer its rights or obligations under this Agreement, whether by

operation of law or otherwise, without the prior written consent of Coventry. Any attempted assignment or transfer by Consultant in violation of this Article 9 is void[.]" *Id.* at 15, Art. 9.

Section 10.3 of the Agreement (entitled "No Third Party Beneficiaries") provides in pertinent part that: "This Agreement is entered into by and between the parties hereto solely for their benefit. The parties have not created or established any third party beneficiary status or rights in any person or entity not a party hereto." *Id.* at 15, § 10.3.

Section 10.6 of the Agreement (entitled "Binding Effect") provides that "[t]his Agreement, is binding upon and inures to the benefit of the parties hereto and their permitted successors and assigns." *Id.* at 16, § 10.6.

Section 10.7 of the Agreement (entitled "Entire Agreement") provides that "[t]his Agreement, including any riders, attachments or amendments hereto, constitutes the entire agreement between the parties and supersedes any prior or contemporaneous agreements or understandings, whether oral or written, regarding the subject matter addressed herein." *Id.* at 16, § 10.7.

### 2.  Performance under the Agreement

Plaintiff alleges that performance under the Agreement consisted of "provid[ing] benefits consulting services to companies, including insurance carriers, self-insured employers, and other entities (referred to in the Agreement as 'Clients')[.]" *Id.* at 3, ¶ 7. Plaintiff generally alleges "perform[ance of] the consulting services as agreed in the Agreement for Coventry to the mutual benefit of the parties to this Agreement[.]" *Id.* at ¶ 9.

Plaintiff further alleges that, "[i]n furtherance of its obligations under the Agreement, Coventry issued a check dated January 22, 2019, in the amount of $174,639.32, representing the payment due for the consulting services provided by . . . [Plaintiff to] Clients for Coventry during

5

the month of December 2018." *Id.* at ¶ 12.  Plaintiff states that a copy of this document is attached to Complaint as an exhibit.  *Id.*  The referenced document is a stub, not a check.  *Id.* at 22 ("DETACH AND RETAIN THIS STUB FOR YOUR RECORDS").  The document is dated January 25, 2019, states that it is from a non-party (Aetna, Inc.), is addressed to CompMed, does not mention Coventry or Enlyte, does not reference the Agreement, does not mention NYSIF or any other client, and describes a slightly different payment amount of $174,629.32 as "December 2018 Finder's Fee."  *Id.*  Plaintiff does not attach any other alleged payments under the Agreement. *See generally* Dkt. No. 2.

### 3.  Termination of the Agreement

Plaintiff alleges that, on March 18, 2019, Coventry wrote a letter "pursuant to Section 6.4.4. of the Agreement" "purporting to terminate the Agreement" as of November 30, 2018.  *Id.* at ¶ 10. Plaintiff attaches a copy of this letter to the Complaint as an exhibit.  Dkt. No. 2 at 20-21.  This letter states that it is a "notice of termination" of the Agreement and that "[t]his termination is being triggered pursuant to Section 6.4.4 of the Agreement.  Schedule Number: 1 is the only Client that was being serviced under the Agreement.  Per the terms of the Agreement, you are required to notify Coventry immediately if your relationship with a Client is terminated."  *Id.* at 20.  The letter also states that "termination is effective November 30, 2018."  *Id.*

### C.  Plaintiff's Legal Claims

Based on Plaintiff's factual allegations, he asserts two claims for breach of contract.  First, he claims that because he and CompMed "fully performed the consulting services to their Clients in accordance with the Agreement[,]" termination of the agreement effective November 30, 2018 constituted a breach of an unspecified provision in the Agreement.  *Id.* at ¶¶ 21-30.  Second, Plaintiff claims that Coventry's termination notice breached Section 7.1 of the Agreement, because

that provision provided for a thirty-day cure period prior to termination.  *Id.* at ¶¶ 31-36.  As a result of these two claims, Plaintiff seeks approximately $884,000 in total damages.  *Id.* at 7-8.

### D.  Procedural History

On November 29, 2024 Plaintiff commenced this action in New York State Supreme Court, Saratoga County, via summons and complaint.  Dkt. No. 1-1.[2]  On January 13, 2025, Plaintiff submitted an affidavit of service indicating that he had effected service of the Complaint upon the New York Secretary of State as Coventry's statutory agent.  Dkt. No. 22-3.

On April 10, 2025, Defendants filed a notice of removal ("Notice") in this Court.  Dkt. No. 1.  Because Defendants appeared to file the Notice more than thirty days after service had occurred, this Court ordered Defendants to show cause as to why this action should not be remanded.  Dkt. No. 7; *see also Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 911-12 (2d Cir. 2024) (stating that courts are "mindful that (1) the removing party . . . 'bears the burden of demonstrating the propriety of removal,' (2) 'statutory procedures for removal are to be strictly construed'; and (3) we must 'resolve any doubts against removability'") (first quoting *O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018); and then quoting *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021)); 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]").

On May 5, 2025, Defendants responded, *inter alia*, that removal was timely because Coventry had not actually received the Complaint until March 11, 2025, and "[t]he heavy weight

---

[2] For convenience, the Court simply refers to the Complaint throughout this memorandum-decision and order.

of authority is to the effect that the time for removal, in cases in which service is made on a statutory agent [such as the Secretary of State] runs from receipt of the pleading by the defendant rather than the statutory agent." Dkt. No. 13 at 1 (second alteration in original) (quoting *Hallenbeck v. Transgas, Inc.*, 53 F. Supp. 2d 543, 544 (N.D.N.Y. 1999)). Plaintiff did not respond to Defendants' submission, despite being given the opportunity to do so. Dkt. No. 7. The Court subsequently found good cause that removal was timely and that this action should not be remanded. Dkt. No. 19.

After numerous requests for extensions of time from both Defendants and Plaintiff, *see* Dkt. Nos. 6, 15, 21, 25, 28, 32, Defendants' Motion and Plaintiff's cross-motion were fully submitted on October 14, 2025. Dkt. Nos. 22, 30, 33.

## III.    STANDARD OF REVIEW

### A.  Motion to Dismiss

#### 1.        Rule 12(b)(5)

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a pleading for insufficient service of process. *See DiFillippo v. Special Metals Corp.*, 299 F.R.D. 348, 353 (N.D.N.Y. 2014). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). To determine whether service of process was sufficient, courts look to materials outside the pleadings "to determine what steps, if any, the plaintiff took to effect service." *Flemming v. Moulton*, No. 13-cv-1324, 2015 WL 5147035, at *4 (N.D.N.Y. Sept. 1, 2015) (citations omitted). If the Court determines that service was insufficient, the court may dismiss the action, or in the alternative, grant leave to allow the

8

plaintiff to cure the insufficiency. *See Muhammad v. Price Chopper Corp.*, No. 24-cv-291, 2025 WL 460836, at *2 (N.D.N.Y. Feb. 11, 2025) (citation omitted).

### 2. Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") tests the legal sufficiency of a party's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

**B. Leave to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure ("Rule 15(a)") permits a party to amend its pleading once as a matter of course "no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Rule 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). When assessing futility, the court employs a standard comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6). *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (observing that "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss").

IV.    **DISCUSSION**

Defendants have moved to dismiss (i) pursuant to Rule 12(b)(5), all claims against Enlyte due to insufficient service; and (ii) pursuant to Rule 12(b)(6), all claims against Defendants for failure to state a claim. *See generally* Dkt. No. 22. Plaintiff opposes and cross-moves for leave to amend pursuant to Rule 15(a)(2).[3] *See generally* Dkt. No. 30. Below, the Court addresses the parties' arguments to the extent necessary to resolve each motion.

---

[3] Given the procedural posture of this matter, the Court agrees that leave to amend is required.

### A. Defendants' Motion to Dismiss

#### 1. Rule 12(b)(5)

Defendants argue that, under New York state law, Plaintiff had until March 29, 2025 to effect service of the Complaint on Enlyte, but failed to do so. Dkt. No. 22-4 at 10-11; *see also* N.Y. C.P.L.R. § 306-b ("Service of the summons and complaint . . . shall be made within one hundred twenty days after the commencement of the action[.]"). According to Defendants, Plaintiff could have "simply deliver[ed] an additional copy of the summons and Complaint to the New York State Secretary of State when it served Coventry [in January 2025], thereby serving both Defendants."[4] Dkt. No. 22-4 at 11; *see also* Dkt. No. 22-3 (January 2025 affidavit of service).

Plaintiff responds that "this was not possible, as Enlyte is not registered with the New York Department of State as a domestic or foreign corporation. Accordingly, the Secretary of State would not have accepted service on their behalf[.]" Dkt. No. 30-10 at 7; *see also* N.Y. Bus. Corp. § 306(b)(1) (setting forth requirements for "[s]ervice of process on the secretary of state as agent of a domestic or authorized foreign corporation"). Plaintiff contends that he instead effected service upon Enlyte's authorized agent in California. Dkt. No. 30-10 at 7; *see also* N.Y. C.P.L.R. § 311(a)(1) ("Personal service upon a corporation . . . shall be made by delivering the summons as follows: (1) upon any domestic or foreign corporation . . . to any other agent authorized by appointment or by law to receive service."). Plaintiff submits a corresponding affidavit demonstrating service "upon Coventry Workers Comp Services, a division of Enlyte"[5] at CT

---

[4] Because the Motion does not challenge the sufficiency of service as to Coventry, Defendants have waived this defense. *See, e.g., Khan*, 360 F. App'x at 204 ("[T]he defense of insufficient service of process may be waived by a party's failure to either raise it in a motion under Rule 12(b) of the Federal Rules of Civil Procedure[.]") (citing Fed. R. Civ. P. 12(h)(1)). The Motion also does not raise any challenge to personal jurisdiction beyond the sufficiency of process as to Enlyte.

[5] As noted earlier, *see supra* Section I, this is Enlyte, which is the second of the two Defendants named in the Complaint, Dkt. No. 2 at 1.

Corporation System's address in California on March 11, 2025. Dkt. No. 30-4. Plaintiff further argues that the one-page "Service of Process Transmittal Summary" ("Summary") subsequently prepared by CT Corporation System was sent to an individual with an "@enlyte.com" email address. Dkt. No. 30-5; *see also* Dkt. No. 30-10 at 8 ("Where service is timely, directed to the correct agent, and results in actual notice, dismissal is unwarranted.").

In their reply, Defendants do not contest that (i) Enlyte was not registered in New York as a domestic or foreign corporation; (ii) CT Corporation System was Enlyte's authorized agent in California; (iii) Plaintiff's affidavit of service states that service of process was made upon Enlyte, via CT Corporation System, on March 11, 2025; (iv) CT Corporation System received service of process on March 11, 2025; or (v) that CT Corporation System transmitted service of process to an Enlyte email address. Dkt. No. 33 at 4. Defendants also do not contest Plaintiff's legal position that New York law permitted service on a foreign corporation through its authorized agent.[6] *See generally id.*; *see also Curry Mgmt. Corp. v. JPMorgan Chase Bank*, *N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.") (citation omitted).

Instead, Defendants assert that because the Summary indicates that it "concerned service of process upon Coventry[,]" and not Enlyte, that invalidates Plaintiff's service of process on Enlyte. Dkt. No. 33 at 4. This assertion appears to be based on a heading of the Summary which states that it is "FOR: Coventry[.]" Dkt. No. 30-5.

To the extent the Summary is relevant to analyzing the sufficiency of process at all,

---

[6] Because Defendants did not remove this case until April 2025, the Court agrees with the parties that New York law governs their disagreement regarding service in March 2025. *See, e.g., Cont'l Ins. Grp., Inc. v. Altunkilic*, 633 F. App'x 61, 62 n.1 (2d Cir. 2016) ("In determining the validity of service *prior to* removal to federal court, we apply the law of the state under which service was made, which here is New York.") (citations omitted).

Defendants' interpretation of the document is unpersuasive.  Foremost, the Summary confirms that Enlyte's authorized agent received and transmitted service of process to at least one individual with an Enlyte email address.  *Id.*  In contrast, none of the recipients have Coventry email addresses.  *Id.*  Second, Defendants chose to omit—and do not address—the actual service of process to which the Summary refers.  *Id.* ("ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT[.]").  In any event, the Summary expressly disclaims the accuracy of the "quick reference" information that it contains and on which Defendants rely.  *Id.* ("*The information contained in this Transmittal is provided by CT for quick reference only*.  It does not constitute a legal opinion, and *should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents*.  The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary.  *CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein*.") (emphasis added).  Thus, the Summary does not support Defendants' characterization that it "concerned service of process upon Coventry."  Dkt. No. 33 at 4.

Regardless, Defendants have failed to establish that a single line on the Summary invalidates Plaintiff's service of process.  Defendants offer no legal authority to support this hyper-technical argument.  *See generally* Dkt. No. 22-4 at 10-11; Dkt. No. 33 at 4.  More importantly, Defendants do not challenge Plaintiff's affidavit of service, Dkt. No. 30-4, stating that service was effected upon Enlyte, through its authorized agent in California on March 11, 2025.[7]  *See, e.g.,*

---

[7] Defendants also do not challenge Plaintiff's apparent failure to file this affidavit of service earlier.  *See generally* Dkt. No. 22-4 at 10-11; Dkt. No. 33 at 4; *compare George v. Pro. Disposables Int'l,*

*Tuccillo v. Tobin*, No. 13-cv-04525, 2024 WL 5159437, at *4 (E.D.N.Y. Dec. 18, 2024) ("A process server's sworn statement of service creates a presumption that service has been effectuated.") (quoting *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013)) (analyzing validity of service under New York law).  Defendants also submit no factual affidavit regarding service in connection with their Motion, nor do they request a hearing concerning service.  *Compare* Dkt. Nos. 22, 33, *with Tuccillo*, 2024 WL 5159437, at *4 ("[N]o hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits.'") (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 58 (2d Cir. 2002)).

As a result, the Court finds that Plaintiff has satisfied his burden of demonstrating sufficient service on Enlyte, *Khan*, 360 F. App'x at 203, and denies Defendants' request to dismiss pursuant to Rule 12(b)(5).  The Court proceeds to consider the merits of the claims against both Defendants.

### 2.  Rule 12(b)(6)

Defendants argue that the Complaint fails to state claims for breach of contract against Coventry or Enlyte because "[i]t is a jumble of conclusory statements lumping both Defendants together, [and] fails to allege all the elements[.]"  Dkt. No. 22-4 at 7.

"Under New York state law, a breach of contract claim must allege: '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'"  *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).  Moreover, courts have found that "New York law and the *Twombly–Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a

---

*Inc.*, 221 F. Supp. 3d 428, 444-45 (S.D.N.Y. 2016), *with Samaan v. City of New York*, No. 18-cv-9221, 2020 WL 3073292, at *2-3 (S.D.N.Y. June 10, 2020).

defendant has breached.  Otherwise, the complaint must be dismissed." *Spencer-Smith v. Ehrlich*, No. 23-cv-02652, 2024 WL 709291, at *12 (S.D.N.Y. Feb. 21, 2024) (citation omitted) (collecting cases); *see also Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 560 (S.D.N.Y. 2024) (similar) (collecting cases).

The Court agrees with Defendants that Plaintiff has not plausibly alleged a breach of contract claim under New York state law.[8]

With respect to the existence of a contract between the parties, Defendants argue that Plaintiff has not alleged that Enlyte was a party to the Agreement.  *See* Dkt. No. 22-4 at 15 ("Even though only Coventry is a party to the Agreement, Plaintiff sues both Coventry and Enlyte for breach of contract because '[t]he exact nature of the relationship between Coventry and Enlyte is not presently known to the Plaintiff.' . . . In short, instead of just suing Coventry, the party to the Agreement, Plaintiff lumps in Enlyte to hedge his bets against either party being unable to satisfy a judgment.")  (first alteration in original) (quoting Dkt. No. 2 at ¶ 5).  Plaintiff acknowledges that his allegations are against both entities merely to ensure recovery, and not because of the Agreement.  Dkt. No. 30-10 at 5 ("Because the exact relationship between Coventry and Enlyte remains unclear, Plaintiff named both entities to ensure recovery[.]"); *see also id.* at 14.  As a result, the Court finds that Plaintiff's allegations against Enlyte are insufficient to state a breach of

---

[8] While the Agreement indicates that it is governed by Delaware law, Dkt. No. 2 at 16, § 10.10, the Court applies New York state law in this diversity action "because the parties' briefs both assume New York state law governs and such 'implied consent is . . . sufficient to establish the applicable choice of law.'"  *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 n.5 (2d Cir. 2023) (alteration in original) (quoting *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017)); *see also* Dkt. No. 22-4 at 13 (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)); Dkt. No. 30-10 at 11 (same).  The Court also notes that no party has argued that the terms of the Agreement are ambiguous under New York state law. *Orchard Hill*, 830 F.3d at 156 ("At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous.") (citation omitted).

contract claim.  *See, e.g., Stapleton v. Barrett Crane Design & Eng'g*, 725 F. App'x 28, 30 (2d Cir. 2018) ("In New York, '[l]iability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties.'") (alteration in original) (quoting *Hamlet at Willow Creek Dev. Co. v. Ne. Land Dev. Corp.*, 878 N.Y.S.2d 97, 111 (App. Div. 2009)).

The contract on which Plaintiff sues states that it is between two parties: Coventry and CompMed.[9]  Dkt. No. 2 at 11; *see also Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 284 (S.D.N.Y. 2023) ("In general, under New York law, a breach of contract action may only be maintained against a party to the contract.") (citations omitted).  The Agreement does not reference Enlyte, *see generally* Dkt. No. 2, and was signed only by Coventry and CompMed, *id.* at 17.  *Kitchen Winners*, 668 F. Supp. 3d at 284 ("And 'a party who is not a signatory to a contract generally cannot be held liable for breaches of that contract.'") (citation omitted).  Additionally, the Complaint provides no non-conclusory allegations from which the Court can reasonably infer any contractual relationship or privity between either Plaintiff and Enlyte, or Enlyte and Coventry.  *See generally* Dkt. No. 2.  As for Plaintiff's claim that Enlyte was acquired by a non-party entity in August 2020, *id.* at ¶ 4, that claim does not plausibly allege that Enlyte was—or became—a party to the Agreement which, according to Plaintiff, became effective in February 2013 and

---

[9] Relatedly, Plaintiff alleges that it is "[a]s a result of [an] assignment" from CompMed that he "possesses the right to seek recovery against the Defendants herein." Dkt. No. 2 at ¶ 2. However, the Agreement states that it prohibits assignment without Coventry's prior written consent. Dkt. No. 2 at 15, Art. 9; *see also Brettler Tr. of Zupnick Fam. Tr. 2008 A v. Allianz Life Ins. Co. of N. Am.*, 57 F.4th 57, 62-63 (2d Cir. 2022) ("The Appellate Division explained in *Sullivan v. International Fidelity Insurance Company* that '[w]ith regard to the contractual provision prohibiting assignment without . . . written consent,' New York courts have 'consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments.'") (alterations in original) (*quoting* 465 N.Y.S.2d 235, 237 (App. Div. 1983)).  And Plaintiff does not allege that CompMed's assignment to him was effective under the terms of the Agreement.  *See generally* Dkt. No. 2.

16

terminated well before August 2020, *id.* at ¶¶ 9, 35. *Cf. In re JPMorgan Chase Cash Sweep Program*, No. 24-cv-6404, 2026 WL 396055, at * 4 (S.D.N.Y. Feb. 12, 2026) ("[A] parent corporation may not be held liable for the contracts [and other acts] of its subsidiary solely because of stock ownership.") (alterations in original) (first quoting *Maki v. Travelers Cos., Inc.*, 44 N.Y.S.3d 220, 223 (App. Div. 2016); and then citing *Chanel, Inc. v. WGACA, LLC*, No. 18-cv-2253, 2018 WL 4440507, at *5 (S.D.N.Y. Sept. 14, 2018)). Thus, Plaintiff has not sufficiently pled the existence of a contractual relationship, privity, or any other basis on which to assert a breach of contract claim against Enlyte. *See generally Stapleton*, 725 F. App'x at 30-31; *Kitchen Winners*, 668 F. Supp. 3d at 284-85.

Defendants also argue that Plaintiff "fails to allege facts to support the conclusory statements that Plaintiff performed under the Agreement." Dkt. No. 22-4 at 13; *see also* Dkt. No. 33 at 5. The Court again agrees. Plaintiff alleges that the Agreement contemplated providing various services to "companies, including insurance carriers, self-insured employers, and other entities (referred to in the Agreement as 'Clients')" in exchange for commission. Dkt. No. 2 at 3, ¶¶ 7-8. But the Agreement defines "Client" individually, and sets forth the corresponding commission obligations for a Client in an individualized Schedule. *See, e.g., id.* at 11, § 1.1; *id.* at 13, § 6.2. The documentation Plaintiff attaches to the Complaint indicates that there was only one such Client and Schedule under the Agreement, *id.* at 18 ("Schedule Number: 1"), and that no further commission was owed once that Client relationship ended, *id.* at 13-14, § 6.4.4 ("Consultant may earn no further commission relating to a specific client as of . . . The date the relationship between Consultant and such Client is terminated by Consultant or Client for any reason."). Plaintiff does not allege that CompMed performed services for NYSIF after November 2018, nor does he plausibly allege that any other unidentified entities for whom CompMed may

have performed services after that date ever became a "Client" under the Agreement. *See generally* Dkt. No. 2; *id.* at 13, § 6.2. Without any factual heft, the generalized allegations to which Plaintiff points, Dkt. No. 30-10 at 12-13, do not plausibly allege that he performed services for a Client under the Agreement, for which he was entitled to receive commission. *In re JPMorgan*, 2026 WL 396055, at \*5 ("Under New York law, a plaintiff's performance of its contract obligations is essential to recover for a breach of that contract.") (citations omitted).

Similarly unpersuasive is Plaintiff's argument that "performance under the Agreement is plausible in that the Defendants paid Plaintiff $174,639.32 representing the payment due for the consulting services provided by the Plaintiff during the month of December 2018[.]" Dkt. No. 30-10 at 13. The document which Plaintiff cites states that it is from a non-party (Aetna Inc.), does not mention Defendants, is not addressed to Plaintiff, does not reference the Agreement, does not indicate that it is payment of a commission under the Agreement, does not mention NYSIF (or any other client), and is dated well after the date by which the Agreement contemplated the payment of commission for services provided to a Client. *Compare* Dkt. No. 2 at 22, *with id.* at 13, §§ 6.2, 6.3. And the rest of the Complaint and Plaintiff's submissions do not even mention this non-party at all. *See generally* Dkt. Nos. 2, 30. As far as the Court can discern, this document appears to be from an unrelated entity and for an unrelated contract. Regardless, Plaintiff's incorporation of this document in the Complaint does not plausibly allege that Plaintiff performed services for a Client under the Agreement. *In re JPMorgan*, 2026 WL 396055, at \*5. Moreover, because Plaintiff identifies no other alleged payments, his argument that performance under the Agreement should be inferred is unpersuasive. *See generally* Dkt. No. 2.

There are additional reasons that Plaintiff has not sufficiently alleged a breach of contract claim against either Defendant. For example, Plaintiff's first breach of contract claim fails to

18

identify any specific provision of the Agreement that either Defendant breached.  *See* Dkt. No. 2 at ¶¶ 21-30; *see e.g., Spencer-Smith*, 2024 WL 709291, at \*12; *Diaz-Roa*, 757 F. Supp. 3d at 560. Plaintiff's second breach of contract claim does identify Section 7.1 of the Agreement, and argues that Defendants breached this provision when they failed to provide him with thirty days to cure a default.  *Id.* at ¶¶ 31-36.  But that claim is not plausibly alleged, given Plaintiff's allegation that the termination of the Agreement was pursuant to Section 6.4.4, *id.* at ¶ 10, which does not require a cure period, *compare id.* at 13-14, §§ 6.4.4, 7.4, *with id.* at 14, § 7.1, as well as the face of the termination notice, which does not reference any default, *id.* at 20.  Moreover, Plaintiff does not allege that he ever cured, or attempted to cure, any default.  *See generally* Dkt. No. 2.

Because Plaintiff has not plausibly alleged a breach of contract claim, the Court grants Defendants' request to dismiss pursuant to Rule 12(b)(6).[10]  *Orchard Hill*, 830 F.3d at 156.

### B.  Cross-Motion to Amend

"While, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, 'leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend . . . for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (alteration in original) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)). "Moreover, a district court is under 'no obligation' to grant leave to amend when the plaintiff offers merely 'conclusory assertion[s]' that amendment would cure a complaint's deficiencies and 'fail[s] to disclose what additional allegations [he] would make which might lead to a different result.'" *Abe v. New York Univ.*, No. 14-cv-9323, 2016 WL 1275661, at \*11 (S.D.N.Y. Mar. 30, 2016)

---

[10] Defendants' requests regarding discovery and mediation, *see, e.g.,* Dkt. No. 22-4 at 16-20, appear moot, *see generally* Docket Sheet, and are denied as such.

(Sullivan, J.) (alterations in original) (first quoting *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004); and then citing *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999)).

The entirety of the argument Plaintiff offers in support of his cross-motion to amend is that "if the Court finds the Complaint deficient, the proper remedy is leave to amend" because "District Courts routinely grant leave" in purportedly similar situations. Dkt. No. 30-10 at 14.

The Court finds that leave to amend is not appropriate here. Plaintiff's cursory cross-motion fails to suggest how he could successfully amend any of his now-dismissed claims, nor does it include a proposed amended complaint. *See, e.g., United States ex rel. Sisselman v. Zocdoc, Inc.*, No. 22-cv-861, 2024 WL 4305667, at *12 (S.D.N.Y. Sept. 26, 2024) ("The Second Circuit has consistently held that district courts may deny leave to amend when a plaintiff requests such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without offering any justification or attaching a proposed amended pleading.") (quoting *Cinema Vill. Cinemart, Inc. v. Regal Ent. Grp.*, No. 15-cv-05488, 2016 WL 571970, at *7 (S.D.N.Y. Sept. 16, 2016), *aff'd*, 708 F. App'x 29 (2d Cir. 2017)); N.D.N.Y. L.R. 15.1(a) ("A party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers.").

As for the two cases that Plaintiff claims are analogous, neither is. In one, the district court granted a *pro se* plaintiff leave to amend his Section 1983 claims. *See Grune v. Hernandez*, No. 22-cv-857, 2023 WL 6065944, at *1, 8 (N.D.N.Y. Sept. 18, 2022). In the other, the district court found that a plaintiff's proposed amended complaint sufficiently pled an Equal Pay Act violation, and denied defendants' corresponding motion to dismiss. *See Fila v. State Univ. of N.Y.*, No. 21-cv-1087, 2022 WL 4379502, at *2-3 (N.D.N.Y. Sept. 22, 2022). Plaintiff, in contrast, is not proceeding *pro se*, is not asserting these claims, and has failed to provide a proposed amended

20

complaint.

For these reasons, the Court denies Plaintiff's cursory request for leave to amend. *See, e.g.,* *Zocdoc*, 2024 WL 4305667, at \*12.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 22, is **DENIED in part and GRANTED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff's complaint, Dkt. No. 2, is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for leave to amend, Dkt. No. 30, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules and close the case.

**IT IS SO ORDERED.**

Dated: March 16, 2026
        Albany, New York

Anne M. Nardacci
U.S. District Judge